IN THE UNITED STATES DISTRICT COURT
FOR THE NORTH ~~ ~~~~~~  ~~~~~~~ EASTERN DIVISION

06CV1050

JUDGE GRADY

MAG. VALDEZ

DARRIN ROBERTS,

  Plaintiff.

v.

CSX TRANSPORTATION, INC.,

  Defendant.

)
)
)
)
)

FILED

FEB 2 4 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT AT LAW

### Count I - FELA Negligence

NOW COMES the Plaintiff, DARRIN ROBERTS, by and through his attorneys, HOEY & FARINA, P.C. and GEORGE T. BRUGESS, and for his Complaint against the Defendant, CSX TRANSPORTATION, INC., states as follows:

1. Jurisdiction of this Court is invoked under the provisions of Title 45 U.S. Code sec. 56 and Title 28 U.S. Code sec. 1331.

2. This action arises under, and the rights and liabilities of the parties to this cause are governed by, the Federal Employers' Liability Act, 45 U.S.C. sec. 51 et seq.

3. At all times herein, the Defendant, CSX TRANSPORTATION, INC., was and is a railroad corporation doing business in the State of Illinois.

4. At all times herein, the Defendant, CSX TRANSPORTATION, INC., was a common carrier by railroad engaged in interstate commerce.

5. On February 25, 2003, and at all pertinent times, the Defendant, CSX TRANSPORTATION, INC., owned, maintained and operated railroad tracks at or near Union Mills, Wellsboro, Indiana.

6. On February 25, 2003, the Plaintiff was employed by the Defendant, CSX TRANSPORTATION, INC., as switchman.

7. On February 25, 2003, the Plaintiff was ordered to perform an air test at Union Mills, Wellsboro, Indiana.

8. At the time and place alleged, Plaintiff was crossing over the rear car of the train, when he slipped and was injured.

9. At the time and place alleged, the Defendant, CSX TRANSPORTATION, INC., had a nondelegable duty to provide the Plaintiff with a reasonably safe place to work, to provide reasonably safe tools and equipment and to provide sufficient manpower to safely perform the tasks at hand.

10. In violation of its duties, the Defendant, CSX TRANSPORTATION, INC., committed one or more of the following negligent acts or omissions:

> (a) failed to provide the Plaintiff with a safe place to work;
>
> (b) failed to warn the Plaintiff of the unsafe condition;
>
> (c) violated certain safety standards including OSHA regulations, FRA regulations and industry safety standards;

2

(d)  failed to inspect for icy conditions;

(e)  failed to enforce safety rules and thereby allowed unsafe practices to become the norm;

(f)  failed to provide the Plaintiff with safe and suitable equipment and tools, including a working lantern and nonskid overshoes;

(g)  failed to remove ice from the train car;

(h)  failed to provide adequate lighting; and

(i)  was otherwise careless and negligent.

11.  Defendant's failure to provide Plaintiff, DARRIN ROBERTS, with a safe place to work by one or more of the aforementioned negligent acts or omissions caused, in whole or in part, Plaintiff's injuries.

12.  As a consequence, Plaintiff, DARRIN ROBERTS, incurred injuries which have caused and will continue to cause him great pain, suffering, inconvenience, anguish, and disability; as a further result, Plaintiff, DARRIN ROBERTS, has been and will in the future be kept from attending to his ordinary affairs and duties, and has lost and will lose great gains which he otherwise would have made and acquired; as a further result, Plaintiff, DARRIN ROBERTS, has incurred medical, hospital, and related expenses and is reasonably certain to incur further medical, hospital, and related expenses in the future.

13.  Plaintiff, DARRIN ROBERTS, demands trial by jury.

3

WHEREFORE, the Plaintiff, DARRIN ROBERTS, demands judgment in his favor and against Defendant, CSX TRANSPORTATION, INC., in a sum to be determined by the jury plus the costs of this suit.

## Count II

### FELA – Intentional Infliction of Emotional Distress

1. On February 25, 2003, DARRIN ROBERTS was employed by CSX TRANSPORTATION, INC. as a trainman.

2. On February 25, 2003, DARRIN ROBERTS was assigned to work a train at Union Mills, Wellsboro, Indiana.

3. The engineer assigned was J.E. Liparula; in addition Trainmaster J.R. Spencer was to ride with the crew to familiarize himself with the territory.

4. J.R. Spencer was a new hire as Trainmaster without prior railroad experience; he previously worked at Walmart.

5. DARRIN ROBERTS reported to Trainmaster Spencer that his lantern was damaged and that he needed a new lantern before departing Garrett Yard; Trainmaster Spencer told DARRIN ROBERTS he would bring him a new lantern.

6. DARRIN ROBERTS also requested a pair of non-skid overshoes; Trainmaster Spencer said he would bring those, too.

7. After DARRIN ROBERTS put together his train and it pulled out onto the main, Trainmaster Spencer arrived by taxi; Spencer forgot to bring the lantern or boots.

8. The crew was assigned to work at Union Mills and worked there switching cars until approximately 10:30 p.m.

4

9. The crew was close to expiration under the Hours of Service law and requested authority to leave the train on the Wellsboro Block at Union Mills.

10. Trainmaster Spencer called R.S. Updike for instructions; Updike instructed Spencer to put the train together, test the air and move the train to the Wellsboro siding.

11. When DARRIN ROBERTS was ordered by Trainmaster Spencer to make the train and air test it, he protested that he did not have a working lantern; Trainmaster Spencer ordered him to work at the rear of the train without a lantern and without nonskid overshoes.

12. While performing his assigned work, it was necessary for DARRIN ROBERTS to cross over the last car to operate a switch; DARRIN ROBERTS asked for and received three point protection.

13. While crossing over without any light, DARRIN ROBERTS slipped and injured his knee.

14. DARRIN ROBERTS walked up to the engine and in the presence of Engineer Liparula reported the injury to Trainmaster Spencer.

15. Trainmaster Spencer ordered DARRIN ROBERTS to disrobe so he could examine DARRIN ROBERTS' knee; DARRIN ROBERTS did so in the presence of te engineer; a large contusion was visible on DARRIN ROBERTS' knee.

5

16. Trainmaster Spencer ordered DARRIN ROBERTS to ice the knee on the way back to the Yard by taxi; Trainmaster Spencer carried DARRIN ROBERTS' grip from the engine to the taxi.

17. Upon return to the yard, DARRIN ROBERTS' knee was swollen and painful; he asked for medical attention.

18. Trainmaster Spencer refused to provide medical service for several hours while he talked by telephone to other officials including R. Updike.

19. Trainmaster Spencer took DARRIN ROBERTS to DeKalb Memorial Hospital only after DARRIN ROBERTS bnaged on the door to Trainmaster Spencer's office and threatened to call an ambulance.

20. Updike met Trainmaster Spencer and DARRIN ROBERTS at the emergency room; Updike was refused admission to the exam room.

21. The treating doctor gave DARRIN ROBERTS a Vicodin tablet for pain and a prescription for Vicodin.

22. When Updike was informed of the Vicodin, he became enraged and forced DARRIN ROBERTS and the emergency room doctor to scratch the Vicodin prescription off the medical report.

23. CSX TRANSPORTATION, INC. filed charges against DARRIN ROBERTS on February 28, 2003 for falsification of circumstances and providing false information concerning DARRIN ROBERTS' February 25, 2003 injury.

24. A hearing was held and DARRIN ROBERTS was fired.

6

25.  After his dismissal, Updike used DARRIN ROBERTS' case as an example at numerous safety meetings saying, "if you lie about an injury like Darrin Roberts did, you will be fired."

26.  Updike made the above statement to numerous CSX TRANSPORTATION, INC. employees, including at safety meetings in the Northern District of Illinois.

27.  At the disciplinary investigation, J.R. Spencer testified to a significantly different version of events than DARRIN ROBERTS and Engineer Liparula.

28.  That a Public Law Board determined that CSX TRANSPORTATION, INC. was not justified in firing Plaintiff and ordered Plaintiff returned to service with his record unimpaired and ordered CSX to pay Plaintiff, DARRIN ROBERTS, all of his lost wages. CSX by order of the Board returned Plaintiff to work with his record cleared and CSX paind Plaintiff wages from his termination to his reinstatement.

29.  The actions of CSX TRANSPORTATION, INC. in this case were investigated by the Federal Railroad Administration (FRA); the FRA determied that CSX TRANSPORTATION, INC. "violated the provisions of the Federal regulations governing intent to harass and intimidate." The FRA recommended that civil penalties be assessed against CSX TRANSPORTATION, INC.

30.  On many occassions prior to February 25, 2003 CSX TRANSPORTATION, INC. violated federal regulations by harrassing and intimidating employees injured while working at CSX.

7

31. The actions of CSX TRANSPORTATION, INC. supervisors, Spencer and Updike, were in furtherance of CSX objectives to reduce personal injury claims by intimidating and harassing employees injured on the job.

32. CSX TRANSPORTATION, INC. failed to properly supervise and failed to fire supervisors Spencer and Updike when CSX knew or should have known of their proclivity to harass and intimidate employees injured on the job.

33. That as a result of the intentional acts of the Defendant, CSX TRANSPORTATION, INC., and its supervisors, Plaintiff, DARRIN ROBERTS, has suffered emotional injury.

WHEREFORE, the Plaintiff, DARRIN ROBERTS, demands judgment in his favor and against Defendant, CSX TRANSPORTATION, INC., in a sum to be determined by the jury plus the costs of this suit.

Respectfully submitted,

George T. Brugess
One of Plaintiff's attorneys

HOEY & FARINA, P.C.
542 South Dearborn Street
Suite 200
Chicago, Illinois 60605
312/939-1212

8